```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK A. SNYDER,                        :
              Plaintiff                :
                                       : Civil Action No. 04-82J
JOANNE B. BARNHART, COMMISSIONER       :
OF SOCIAL SECURITY,                    :
              Defendant                :
```

**Report and Recommendation**

Recommendation

Mark Snyder appeals from the decision of the Commissioner of Social Security denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401-33, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C.§§ 1381-83f. An ALJ found, on May 15, 2003, that Snyder was not disabled up to and including that date. Tr. 18-25. The Appeals Council, after considering a letter brief from plaintiff's counsel, Tr. 313-14, denied review on February 10, 2004, Tr. 7-9, thus making the ALJ's findings the basis for the Commissioner's decision.

Because substantial evidence supports the ALJ's findings that Snyder was not disabled for the period in question, I recommend that the defendant's motion for summary judgment, docket no. 12, be granted, the plaintiff's motion for summary judgment, docket no. 10, be denied, and the decision of the Commissioner affirmed.

Report

Snyder applied for benefits in 2001, alleging disability since 2001, because of his high blood pressure, dysthymia, and depressive disorder, but after a hearing, Tr. 27-64, an ALJ found

Snyder not disabled on May 13, 2002. Tr. 92-100. Snyder neither appealed from this decision nor sought the re-opening of this decision, and it is therefore res judicata that Snyder was not disabled through May 13, 2002. Snyder then, in June 2002, filed the application under consideration here, alleging he was disabled as of May 14, 2002, due to high blood pressure and a nervous breakdown. Tr. 140. After a hearing before a different ALJ on April 10, 2003, Tr. 65-88, resulted in a finding that Snyder was not disabled through May 15, 2003, Snyder commenced this action in the district court. The court's duty in reviewing a denial of disability benefits and SSI is to determine whether "substantial evidence," 42 U.S.C.§ 405(g), 1383(c)(3), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's finding that Snyder is not disabled. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999). The definition of disability for purposes of disability benefits and SSI requires an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A).

My responsibility is to examine the whole record, not simply to confirm the existence of those pieces of evidence relied

upon by the ALJ, see Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986), and I have therefore read the entire record, whether cited by counsel or not. However, even in cases where my reading of the record would convince to decide issues differently if my review were de novo, the substantial basis level of review would not permit me to substitute my judgment for that of the ALJ. Hartranft v. Apfel, supra, 181 F.3d at 360.

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). It is not in dispute that at step one: (1) Snyder was not working after his alleged onset date of May 14, 2002; and (2) he has severe impairments, described by the ALJ as benign positional vertigo, a depressive disorder, a dysthymic disorder, and an avoidant personality disorder. Snyder does not argue, see docket no. 11, Plaintiff's Brief at 9, that he meets the requirements of any disability listings at step 3. He did make that argument in a very oblique fashion before the Appeals Council, Tr. 313-14, although not before the ALJ, Tr. 87. The ALJ considered the evidence at the fourth step and found that (4) Snyder could return to his relevant past work as a maintenance man. Snyder disputes this and additionally argues, Plaintiff's Brief at 9, at the fifth and final step, that (5) he lacks the residual functional capacity to do the work necessary in jobs existing in significant numbers in the national economy. See Plummer v. Apfel, supra, 186 F.3d at 428

(at step five, the burden of production shifts to the Commissioner to show existence of work for claimant in the national economy.) However, if the ALJ lacked substantial evidence at step four, the relief ordinarily appropriate is a remand to the ALJ for further proceedings at step five, and not to have the court itself make findings at step five. I confine myself therefore to the correctness of the ALJ's step four determination.

  In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett v. Commissioner, 220 F.3d 112, 120 (3d Cir.2000). The ALJ determined that Snyder, 44 years old at the time of the decision by the ALJ, had no exertional impairments. Tr. 23. Snyder does not disagree with this finding. Snyder argues that "he can not perform his past work or any other competitive employment due to his non-exertional impairments more specifically his lack of mental abilities." Plaintiff's Brief at 9. Examining Snyder's nonexertional limitations, the ALJ found that Snyder had benign positional vertigo, major depressive disorder, dysthymic disorder, and avoidant personality disorder; the ALJ also found that Snyder had high blood pressure but concluded that since it was controlled with medication it was not a severe impairment.

The ALJ found that these physiological and psychological conditions resulted in moderate depression and anxiety, occasional mood swings and panic attacks, and some dizziness, and limited Snyder to simple, routine, unskilled, low stress, low concentration, low memory work which does not require exposure to heights or moving machinery, the ability to deal with stress or to meet quotas, or significant interaction with the public or supervisors. Tr. 81-82. At the hearing before the ALJ on April 10, 2003, in response to a set of hypothetical questions posed by the ALJ setting forth these limitations, a vocational expert testified that such limitations would preclude some of the jobs Snyder previously held but would not preclude Snyder's return to maintenance work he had previously done. Tr. 82. This was the same conclusion reached by a different vocational expert in the hearing before a different ALJ in 2002, Tr. 55. During the hearing, there was testimony about the demands of Snyder's maintenance job. The ALJ's finding that Snyder's former maintenance job was unskilled medium exertional work, Tr. 24, was erroneous, because the vocational expert testified that, as performed, Snyder's job was light exertion. Tr. 79-80. This error was harmless, because the ALJ's error in finding Snyder's past work more demanding than it really had been was in Snyder's favor.

At the second hearing, the vocational expert also went on to discuss other jobs that a hypothetical individual could perform if the inquiry proceeded to step five, and Snyder, through counsel,

5

questioned the vocational expert about the effect on holding any of these jobs if the hypothetical individual were unable to stay on task for more than 50 to 55 minutes each hour or were to miss work more than one day per month. Unsurprisingly, the vocational expert opined that an employee who was unreliable about reporting for work or who could not stay on task would not be able to do any work. Tr. 84-86.

The question on appeal is whether the ALJ's hypothetical to the vocational expert adequately contained all of the functional limitations caused by Snyder's nonexertional impairments. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir.2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). This inquiry resolves into two related constraints on the ALJ's use of the vocational expert's testimony: while an ALJ need not read verbatim from the medical reports of record in framing the hypothetical to the vocational expert, the hypothetical posed to the vocational expert must first of all contain the limitations the ALJ does find; second, substantial evidence must support the choice of the ALJ to reject limitations the ALJ does not include in the hypothetical. Ramirez illustrates the first requirement: there, the ALJ's hypothetical limitation of an individual to "simple one or two step tasks" did not adequately capture the limitations caused by the finding made by the ALJ that the claimant "often" had deficiencies in concentration, persistence, and pace. 372 F.3d 552-53. In Chrupcala, the ALJ

6

posed a formally valid hypothetical question, but erred in formulating the hypothetical question by rejecting without substantial evidence the claimant's nonexertional limitation of constant and severe pain. 829 F.2d at 1276.

Here, the ALJ found that Snyder had "mild" limitations on his activities of daily living, and "moderate" limitations in social functioning with co-workers and the public, and in concentration, persistence, and pace, which were not inconsistent with the ability to perform simple unskilled work. Tr. 20-21. His hypothetical to the ALJ therefore did not fail to include all of the limitations he found. A review of the medical evidence shows that the ALJ also had substantial evidence to reject the more extensive limitations Snyder contends he has.

Snyder is a high school graduate and had relevant work experience as a busboy, cook, and maintenance man. Snyder had moved back to the Clearfield County area from Florida to take care of his terminally ill mother, who died in June 2000. Snyder was also going through his second divorce, which became final on January 1, 2001, Tr. 134. After his mother's death Snyder sought treatment for depression. Tr. 169-173. Snyder continued to work, however, until May 2001. Tr. 140.

Snyder's treatment for depression included a 5 day inpatient stay in February 2001. Tr. 178-98, Tr. 274-81. That is Snyder's most serious episode of medical treatment, but as noted

7

above, it occurred before the period Snyder alleges he became disabled, during a period during which it has been established that Snyder was not disabled. Turning to the evidence of disability after Snyder's alleged onset date, it appears that a CT scan and physical examination in June 2002 showed no abnormalities in Snyder's skull or carotid arteries. Tr. 216, 225. Beginning in the summer of 2000, see Tr. 173-76, Snyder had attended quarterly outpatient counseling sessions at Clearfield-Jefferson Community Mental Health Center with Scott Turkin, M.D., a psychiatrist. These sessions continued through the alleged onset date of May 14, 2002, into 2003. Tr. 282-85. Turkin believed that Snyder suffered from dysthymia but had no symptoms of psychosis. Snyder's subjective evaluations of his condition throughout 2002 show that sometimes he felt better, Tr. 283, and sometimes worse, Tr. 284. No trend appears in either direction, and Turkin did not increase or change Snyder's medication or frequency of office visits through this period. Tr. 282. Snyder's counsel cites Turkin's opinion in September 2000, Tr. 169-71, see Plaintiff's Brief at 13, but even if that opinion supported an argument that Snyder was more impaired in February 2001, that opinion refers to a time before Snyder's alleged onset date and during which Snyder was employed. Turkin's most recent opinions of record were that Snyder had improved and was no longer experiencing a major depressive disorder (September 2002, Tr. 283), and was stable (January 2003, Tr. 282).

The state disability agency had Snyder undergo a consultative evaluation with Dennis Clark, D. Ed., a psychologist, on August 20, 2002. Tr. 226-31. Clark opined that Snyder had poor or no ability to deal with work related stress, maintain attention or concentration, be reliable, or carry out complex instructions, but that he had a fair ability to follow simple instructions, relate to the public and co-workers, use judgment, and function independently. Snyder's counsel argues that Clark's consultative opinion is tantamount to a finding of disability, see Plaintiff's Brief at 14, but it is not inconsistent with the limitations posed by the ALJ's hypothetical to the vocational expert. Although it is by the same token not inconsistent with counsel's suggestion to the vocational expert that Snyder could be expected to miss work at least one day a month or stray off task every hour, Clark's opinion does not compel a finding of such limitations.

A reviewing psychologist, Raymond Dalton, Ph.D., further concluded in September 2002, Tr. 232-34, that the results of Clark's evaluation showed that Snyder had only moderate limitations in his ability to carry out complex instructions and could function in a workplace that did not pose stressful situations.

Snyder's relevant medical record (his treatment with Doctor Usaitis for a pilonidal cyst, Tr. 262, and for hypertension, Tr. 265, are not argued to be relevant to the claim of nonexertional limitations), particularly for the period of time after his alleged

9

onset date of May 14, 2002, is unusually meager for a social security file: despite the serious nature of Snyder's problems, the only medical treatment during the relevant period for any psychiatric condition is the quarterly sessions with Turkin. Frequently, appeals of denials of disability or SSI claims require the court to review the evidence the ALJ used to reject the claimant's treating physician's opinion that the claimant is disabled.  Here, there is no opinion by Turkin or any other treating medical professional that Snyder is disabled, and Snyder's argument that Turkin found that Snyder needed a medication change and was having auditory hallucinations, see Plaintiff's Brief at 18, misreads the record.  Turkin in fact found no medication change was needed, and did not say he believed Snyder's self-report of hallucinations.  A fair conclusion from the record, Tr. 282, would be that Turkin did not believe Snyder, since Turkin assessed Snyder's financial circumstances as playing a "large role" in Snyder's adjustment difficulties, and did not mention the alleged hallucinations at all.  Id.  The ALJ can hardly be faulted for rejecting a claim of disability not supported by a plaintiff's own medical care provider.

      A diagnosis of a medical condition, even one like major depressive disorder, which is not accompanied by impairment of functional capacity, is not a disabling condition.  Petition of Sullivan, 904 F.2d 826, 844-45 (3d Cir.1990)(alcoholism); see also

20 C.F.R. §404.1530(b). The ALJ had substantial evidence to support his conclusion that Snyder's depression was not disabling, namely: 1) Turkin's opinion that Snyder was improving or stable; 2) the lack of aggressive treatment for Snyder's depression (for example, evidence of inpatient treatment after the alleged onset date, an change in medication regimen); and 3) the lack of evidence of any physical or psychological deterioration. The ALJ's hypothetical to the vocational expert reflected a range of the disabilities and limitations that the ALJ could correctly have found Snyder to have, and the vocational expert's testimony that Snyder could return to his past work was therefore a substantial basis for finding Snyder not disabled. The Commissioner's decision to deny benefits for the time period at issue was supported by substantial evidence and must be affirmed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 1/18/06

Keith A. Pesto,
United States Magistrate Judge

cc:
R. Christopher Brode, Esquire
305 Walnut Street
Meadville, PA 16335

John J. Valkovci, Jr., Esquire
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901

11